## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JEFF HOWARD,                         )
                 Plaintiff,     )
                           )
v.                                   )       Case No. CIV-06-408-M
                           )
JO ANNE B. BARNHART,                 )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION,             )
                           )
               Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff, Mr. Jeff Howard, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Mr. Howard's application for disability insurance benefits. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded.

## I.    The Administrative Decision

The Administrative Law Judge (ALJ) issued her decision on June 14, 2005, and found Mr. Howard not disabled. AR 22-31. The ALJ applied the five-step sequential evaluation process, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005), and found at step one that Mr. Howard had not engaged in substantial gainful activity since his alleged disability onset date of April 15, 2002. AR 24, 29. At step two, the ALJ determined that Mr.

Howard has "impairments of an alcohol condition, seizure disorder, bipolar disorder, attention deficit hyperactivity disorder, and hypertension" and that these impairments are severe within the meaning of the Social Security regulations. AR 24, 29. At step three, the ALJ determined Mr. Howard's severe impairments do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 24, 29.

The ALJ next determined Mr. Howard's residual functional capacity.  The ALJ found Mr. Howard has the residual functional capacity to perform medium work.  He can follow complex instructions, but needs written reminders or cues.  Mr. Howard is easily distracted and needs to work in a solitary environment or an environment that lessens distraction of people or objects.  He is not able to stay on tasks more than 70 percent of the time and needs regimentation of procedures and expectations.  AR 27, 29.  Based on this residual functional capacity, the ALJ determined at step four of the sequential evaluation process that Mr. Howard could return to his past relevant work as a janitor and order filler, both jobs performed at the medium exertional level.  AR 28, 29.

The ALJ made alternative step-five findings and determined that Mr. Howard could also perform light and sedentary, skilled and unskilled jobs as a parking lot attendant, fast food worker, microfilm document preparer and telephone clerk.  AR 28, 29-30.  The ALJ further determined that these jobs exist in significant numbers both in the local and national economy.  *Id.*  Therefore, the ALJ determined Mr. Howard was not disabled.  AR 28, 30.

Mr. Howard appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied his request for review, AR 5-7, making the ALJ's decision the final decision of the Commissioner.

## II.   Issues Presented for Judicial Review

Mr. Howard presents the following issues for judicial review: (1) whether the ALJ erred, as a matter of law, by refusing testimony of a lay witness; (2) whether the ALJ's decision is supported by substantial evidence because the hypothetical questions to the vocational expert failed to include all impairments supported by the record; (3) whether the ALJ ignored the opinion of the treating psychiatrist, Dr. Linden; and (4) whether the ALJ erred by failing to resolve any conflicts between the Dictionary of Occupational Titles and the vocational expert's testimony.

## III.   Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it.   *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004).   The court

considers whether the ALJ followed the specific rules of law that must be followed in

weighing particular types of evidence in disability cases, but the court does not reweigh the

evidence or substitute its own judgment for the Commissioner's.   *Hackett*, 395 F.3d at 1172

(quotations and citations omitted).

**IV.   <u>Analysis</u>**

   **A.   <u>Claim One – Whether the ALJ Committed Legal Error by
   Refusing Testimony of a Lay Witness</u>**

   Mr. Howard claims the ALJ prevented his wife from testifying about his "decision-

making" abilities. The record discloses that before allowing Mr. Howard's wife to testify, the

ALJ first sought to elicit such testimony on this issue directly from Mr. Howard. AR 287-

288.   After thorough questioning of Mr. Howard, the ALJ concluded by saying: "I'll just go

on with Dr. Lynn, I think he's sat here long enough.   The amazing thing is people tell the

truth and help give us great pictures."   AR 295.   Mr. Howard's representative responded

"Mmm hmm."   *Id*. The representative did not object or make further request to present the

testimony of Mr. Howard's wife.   While an ALJ "shall allow the parties or their designated

representatives" to "ask the witnesses any questions material to the issues," *see* 20 C.F.R.

§ 404.950(e), it does not appear from the record that the ALJ prevented Mr. Howard's

representative from questioning   Mr. Howard's wife.   Rather, it appears Mr. Howard's

representative waived that right by not reasserting a request to undertake such questioning.

Mr. Howard does not provide this Court with any indication as to specific testimony his wife would have given about Mr. Howard's decision-making abilities, and the record shows Mr. Howard gave sufficiently detailed testimony about his inability to make decisions and stay focused.   AR 288-295.   Therefore, Mr. Howard has failed to demonstrate that testimony from Mr. Howard's wife would be material to the issues.

Mr. Howard further contends that by refusing to allow this witness testimony the ALJ committed legal error in failing to develop the record.   A social security disability hearing is nonadversarial, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993). However, Mr. Howard has failed to identify  the specific testimony Mr. Howard's wife would have given, and, therefore, Mr. Howard has failed to demonstrate the ALJ did not adequately develop the record.  The testimony Mr. Howard provided together with the medical evidence of record sufficiently demonstrates Mr. Howard's decision-making abilities. *Compare Glass v. Shalala*, 43 F.3d 1392,  1396 (10th Cir. 1994) (noting that ALJ's duty to develop is not a "panacea" for claimants and finding that ALJ satisfied duty where claimant "spoke extensively on the nature of her impairments and their impact on her physical abilities").  Mr. Howard's first claim of error, therefore, is without merit and should be denied.

**B.     Claim Two – Whether the Hypothetical Questions to the Vocational Expert Properly Included All Impairments Supported by the Record**

In his second claim, Mr. Howard contends the medical record reflects that he has impairments which were not addressed by the ALJ.  Mr. Howard  primarily challenges the ALJ's failure to address his severe osteoarthritis of the wrists.

The record includes a rheumatology consultation performed by Dr. William Schnitz on February 9, 2004.  Dr. Schnitz examined Mr. Howard and found: "Wrists have only 5-degree of range of motion on the right hand and 1+ swelling and tenderness.  His left hand has about 20 degrees of flexion and extension and 1+ swelling and tenderness."  AR 264.  Dr. Schnitz's assessment was "[o]steoarthritis of the wrists that is severe and probably secondary to repetitive work."  AR 264.  Dr. Schnitz prescribed Mobic and advised Mr. Howard to "[c]onsider referral to a hand surgeon for fusion of the wrist."  He also recommended trying to "retrieve X-rays so I can validate that he does have osteoarthritis." AR 264.

The ALJ referenced Dr. Schnitz's treatment records in  his "Objective Medical Findings" stating:

> The claimant underwent an examination by William M. Schnitz, M.D., a rheumatologist, on February 9, 2004 for chronic pain and in his wrists, worse on the right.  Clinical testing showed limited motion and swelling of the wrists. It also appeared he had decreased circulation or peripheral vascular disease of mild severity.  No x-rays were performed.

AR 25.  In the ALJ's discussion of the "Subjective Evidence" the ALJ also referenced Mr. Howard's subjective complaints regarding his wrists both as relayed to doctors during

6

medical treatment and as presented through Mr. Howard's testimony at the hearing before the ALJ. *See, e.g.*, AR 26 ("he had a lot of arthritic pain in his hands"; "he had pain in his wrists, shoulder, and sometimes in his ankles"; "[h]e said he could not pick up things with his hands due to pain in his hand and wrists"). Despite the ALJ's acknowledgment of the objective and subjective testimony reflecting Mr. Howard's wrist impairments, the ALJ did not include any limitation reflecting these impairments in the residual functional capacity determination.

Mr. Howard claims the ALJ's decision is not supported by substantial evidence because the hypothetical questions to the vocational expert did not reflect all impairments supported by the record. It is well-established law that hypothetical questions to a vocational expert must reflect with precision all of a claimant's limitations that are borne out by the evidentiary record. *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995); *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted). Where hypothetical questions fail to relate with precision such limitations, the vocational expert's testimony cannot constitute substantial evidence to support the Secretary's decision." *Hargis*, 945 F.2d at 1492.

The ALJ found at step four of the sequential evaluation process that Mr. Howard could perform his past relevant work as a janitor and as an order filler, both of which are performed at the medium exertional level. The vocational expert testified that the order filler job would be eliminated if an individual could not perform a job requiring repetitive use of the wrists. AR 304. The vocational expert testified, however, that the janitor job would not be eliminated. Thus, the Commissioner contends the vocational expert's testimony is

7

substantial evidence that supports the ALJ's decision.   However, as Mr. Howard
demonstrates, a discrepancy exists between the Dictionary of Occupational Titles (DOT)
listings for janitor jobs and the vocational expert's testimony.

The vocational expert testified that "there are five job titles in the DOT of janitor."
AR 300.  Although the vocational expert did not provide the specific numerical listings for
these jobs, Mr. Howard identifies the following: Change-House Attendant, 358.687-010;
Supervisor, Janitorial Services, 381.137-010; Cleaner, Commercial or Institutional, 381.687-
014; Cleaner, Industrial, 381.687-018; and Janitor, 382.664-010.  *See* Opening Brief of Mr.
Howard at 13. [1]  As Mr. Howard correctly states, each of the janitorial jobs requires frequent
reaching and handling.  The vocational expert did not explain how a hypothetical individual
with a restriction prohibiting repetitive use of the wrists could perform the frequent reaching
and handling requirements of the janitorial jobs.  Therefore, the ALJ's finding that Mr.
Howard could perform his past relevant work as a janitor is not supported by substantial
evidence.  *See Haddock v. Apfel*, 196 F.3d 1084, 1091  (10th Cir. 1999) ("[T]he ALJ must
investigate and elicit a reasonable explanation for any conflict between the Dictionary and
expert testimony before the ALJ may rely on the expert's testimony as substantial evidence
to support a determination of nondisability.").  A remand is required so that the ALJ can
develop the record by obtaining further vocational expert testimony to address the apparent

---

[1]Mr. Howard also lists a sixth position, Sexton (non-profit organization), 389.667-010.

conflict between the vocational expert's testimony as reflected in the current record and the DOT listings for the various janitorial jobs identified.

Mr. Howard also challenges the ALJ's findings as to the mental requirements of the janitor jobs.  Specifically, Mr. Howard challenges the ALJ's findings as to the degree of supervision required for the jobs and the ability to "stay on task."  The questioning of the vocational expert in this regard is fragmented, difficult to follow, and at points interrupted by designations of [INAUDIBLE].  AR 301-304.  On remand, the ALJ should ensure that the findings regarding the mental requirements of the janitorial jobs are supported by substantial evidence and that any conflict between the vocational expert's testimony as to these requirements and the DOT is adequately explored and developed.

The ALJ made an alternative finding at step five of the sequential evaluation process that Mr. Howard could perform light and sedentary jobs including: parking lot attendant, fast food worker, microfilm document preparer and telephone clerk.  AR 28.  The Commissioner contends the vocational expert testimony establishes Mr. Howard can perform these jobs even if a restriction exists prohibiting work requiring repetitive use of the wrists.  Therefore, the Commissioner contends the ALJ's step five findings demonstrate the disability decision is supported by substantial evidence.

The Commissioner is correct that the vocational expert testified these light and sedentary jobs could be performed even with the restriction prohibiting work requiring repetitive use of the wrists.  However, when the vocational expert identified these jobs, it appears all other restrictions included in Mr. Howard's residual functional capacity were not

considered.  At the point in the vocational expert questioning where the ALJ first considered a limitation based on an inability to perform work requiring repetitive use of the wrists, the ALJ instructed the vocational expert to "leav[e] aside those other hypotheticals" and to consider "a situation as far as no repetitive use of the wrists."  AR 304.  After the vocational expert identified the light and sedentary jobs that could be performed with a restriction on repetitive use of the wrists, the ALJ then asked the vocational expert whether those jobs would remain "if we added back those other limitations we'd given originally . . . ."  AR 306.[2]  The vocational expert testified the light and sedentary jobs would be eliminated with those additional limitations.  *Id.*  Therefore, contrary to the Commissioner's claim, the ALJ's step-five findings do not constitute substantial evidence to support the ALJ's decision.  On remand, the ALJ should ensure the hypothetical questions to the vocational expert reflect with precision all impairments borne out by the evidentiary record and should obtain vocational expert testimony to address any apparent conflicts between the vocational expert testimony and the DOT.[3]

---

[2]The ALJ did not identify "those other limitations" but viewing the vocational expert testimony as a whole, it appears the ALJ references limitations in Mr. Howard's ability to "stay on task" as reflected in the findings regarding Mr. Howard's mental residual functional capacity.

[3]Mr. Howard has not challenged the ALJ's residual functional capacity determination even though the ALJ failed to incorporate limitations regarding use of the wrists.  Apparently Mr. Howard did not do so because the ALJ did include those limitations in the hypothetical questions to the vocational expert.  The medical record together with Mr. Howard's subjective complaints support such a limitation.  On remand, the ALJ should ensure the residual functional capacity assessment reflects this limitation.  If the ALJ finds such a limitation is not supported by the evidentiary record, the ALJ should state her reasons, tied to the evidentiary record, for rejecting such a limitation.

C.     **Claim Three – Whether the ALJ Ignored the Opinion of the Treating Psychiatrist, Dr. Linden**

Mr. Howard claims Dr. Linden is a treating psychiatrist and that the ALJ erred by failing to discuss the weight, if any, the ALJ may have attributed to Dr. Linden's opinion. According to Mr. Howard, the ALJ's conclusions regarding his mental residual functional capacity assessment, in particular the ALJ's implicit finding that Mr. Howard could stay on task up to 70 percent of the time, are not supported by substantial evidence.

The record shows Mr. Howard was admitted to High Pointe for a psychiatric assessment in April 2004. AR 252. Dr. Linden is designated as Mr. Howard's admitting physician. AR 249. On discharge, Mr. Howard's diagnosis was Bipolar Disorder, Type I; Intermittent Explosive Disorder; and Cannabis Abuse, Continuous. His GAF score at discharge was listed at 40. AR 249.[4]

The record includes treatment notes from Dr. Linden through June 2004. AR 252-262. At that time, Mr. Howard reported that he was doing much better on medications. However, he continued experiencing difficulty concentrating and focusing and was feeling very distracted. AR 259. He also asked to be placed back on Ritalin for treatment of his

_____

[4]The Global Assessment of Functioning (GAF) is a subjective determination based on a scale of 1-100 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) at 32. A GAF score of 31-40 is extremely low, and "indicates [s]ome impairment in reality testing or communication . . . [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* While "[s]tanding alone a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work . . . [a] GAF score of fifty or less . . . does suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) (unpublished op.).

11

Attention-Deficit Hyperactivity Disorder (ADHD).[5]  Dr. Linden's impression was Bipolar I Disorder, Most Recent Episode Mixed, Improved; Intermittent Explosive Disorder, Improved; Attention-Deficit Hyperactivity Disorder, Hyperactive Type, plan to restart Ritalin; Cannabis Dependence, In Early Remission; Alcohol Abuse, In Early Remission.  AR 259.

The ALJ  did not make specific reference to Dr. Linden or identify him as a treating psychiatrist.  She did, however, reference in part Dr. Linden's diagnosis of Mr. Howard stating:  "[m]ental status testing was normal except for a mildly anxious mood, constricted affect and decreased concentration and sleep."  AR 25.  In determining Mr. Howard's mental residual functional capacity, the ALJ found:

> He can follow complex instructions, but he needs written reminders or cues.
> He is easily distracted and needs to work in a solitary environment or an
> environment that lessens distraction of people or objects.  He is not able to stay
> on tasks more than 70 percent of the time and needs regimentation of
> procedures and expectations.

AR 27.  As support for this finding, the ALJ stated that Mr. Howard's "attention deficit hyperactivity disorder does not appear under complete control, but his symptoms are significantly lessened by medical treatment."  AR 27.  The ALJ did not identify the evidence relied upon to support either this finding or her mental residual functional capacity assessment.

---

[5]The record discloses a long treatment history for Mr. Howard's ADHD.  *See, e.g,* treatment records of Dr. Richards, October 31, 2001 through June 28, 2004.  AR 222, 224-227, 241-242, 244-245, 247.

In her decision, the ALJ did not reference the consultative examiner's Psychiatric Review Technique (PRT) form completed in February 2003.  AR 204-217.  That form includes findings that Mr. Howard had dysthymia and "mild" difficulties in maintaining concentration, persistence or pace.  AR 207, 214.  It is the only PRT form in the record and was completed in February 2003, one year prior to Mr. Howard's admission to High Pointe.

The ALJ likewise did not reference testimony of the medical expert at the hearing before the ALJ.  The medical expert gave testimony about Mr. Howard's bipolar disorder and diagnosis of ADHD.  However, the significance of the medical expert's opinion about these conditions is difficult to ascertain due to [INAUDIBLE] designations in the record.[6]

The Commissioner claims Dr. Linden is not a treating physician noting that he saw Mr. Howard for a limited period of six weeks and further that Dr. Linden's medical records are consistent with the ALJ's mental residual functional capacity assessment.

---

[6]The medical expert's testimony is reflected in the record as follows:

Dr. Linden has concurred the diagnosis of ADHD.  There was a diagnosis of bipolar in his [INAUDIBLE] notes.  And listing [sic] to his testimony today, I would concur that it is certainly a pattern with ADHD to have some interference [INAUDIBLE].

AR 297.  The medical expert testified that Mr. Howard's ADHD is "not under satisfactory control. It's not restoring him to [INAUDIBLE] function."  *Id.*  The medical expert further testified about the effect of medication on Mr. Howard's ability to concentrate:

The medication has appeared to control the agitation, but has not helped a great deal with the concentration.  So we're left with somebody who does have a problem with attention span and who has had a [INAUDIBLE] work situation would be, I wouldn't say constant supervision, but [INAUDIBLE] supervision.

AR 298.

Without deciding whether Dr. Linden is a treating physician, the ALJ's failure to discuss the weight given to Dr. Linden's opinion together with the ALJ's failure to identify the evidence relied upon to support his mental residual functional capacity determination requires a remand. The governing regulations require the ALJ to consider every medical opinion in the record. *See* 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive."). Here, the ALJ's opinion does not reflect that she gave controlling weight to a treating physician opinion. In these circumstances, the ALJ "must explain in the decision the weight given . . . any opinions from treating sources, nontreating sources and other nonexamining sources . . . ." *Id*., § 404.1527(f)(2)(ii). *See also Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (where ALJ fails to identify claimant's treating physician, ALJ must evaluate each medical opinion and accord it the proper weight on the basis of (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship: (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist).

The ALJ failed to discuss the weight given to Dr. Linden's findings or explain what medical evidence formed the basis of his mental residual functional capacity determination. In addition to these errors, the ALJ failed to comply with the regulations requiring

documentation of the application of a special "technique" assessing mental impairments in the decision.  *See* 20 C.F.R. § 404.1520a(e).[7]

Without the proper analysis, it is impossible to determine the basis for the ALJ's conclusions regarding Mr. Howard's mental residual functional capacity and, therefore, whether the ALJ's conclusions are supported by substantial evidence.  *See Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) ("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.") (citation omitted).  On remand, the ALJ should address the weight given to the medical opinions in the record and should demonstrate his residual functional capacity determination is supported by the evidence of record.

### D.    Claim Four – Whether the ALJ Legally Erred in Failing to Resolve Conflicts between the DOT and the Vocational Expert's Testimony

In his final claim of error, Mr. Howard alleges the ALJ committed legal error in failing to resolve any conflicts between the DOT and the vocational expert's testimony.  As discussed in relation to Mr. Howard's second clam of error, the evidentiary record discloses that the vocational expert's testimony appears to be in conflict with the DOT listings for the various janitorial jobs. The ALJ did not inquire whether a discrepancy existed as to the exertional level of these jobs and the vocational expert did not explain the discrepancy. The

---

[7]As part of the technique the ALJ is required to evaluate and rate the claimant's ability to function despite his or her mental impairments (Part B criteria).  *See id*. § 404.1520a(c)(3).

ALJ had a duty to make such inquiry.  *See* Soc. Sec. Rul. 00-4p, 2000 WL 1898704 at *2 ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is [a] consistency [between the occupational evidence provided by a vocational expert and the occupational information supplied by the DOT].").  The ALJ committed legal error in relying on the vocational expert's testimony without obtaining a reasonable explanation for the apparent conflict.  *Id*. at *4 ("When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.").  A remand is required to correct the factual and legal errors in the ALJ's step-four finding that Mr. Howard  can perform his past relevant work as a janitor.

### E.    Summary

In sum, Mr. Howard's first claim of error is without merit and should be denied. However, Mr. Howard's remaining claims of error require a remand.  On remand, the ALJ should address the apparent conflicts between the vocational expert's testimony for the janitorial job identified and the applicable DOT listings and develop the record by obtaining vocational expert testimony to address these apparent conflicts.  With respect to the ALJ's residual functional capacity determination -- both physical and mental -- the ALJ should discuss the medical and other evidence relied upon to support the determination, complying with the relevant legal standards governing the weight to be afforded the evidence relied upon.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by January __8th__, 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __18th__ day of December, 2006.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE